In delivering the opinion of the court, the Chief Justice has rendered any other statement of the case unnecessary.
Tilghman, C. J.
This is an appeal of Christian Metz, Jr. and. David Cassel, administrators of William Malony, deceased, from the decree of the Orphans’ Court of Lancaster county, on the settlement, of their administration account. The account was *205 sent by the register of wills, before, whom it ivas passed, to the Orphans’ Court, where it was read on the 26th of December, 1817, and on the same day, several exceptions were taken to it, by persons who claimed as next of kin of the intestate. On the 19th of June, 1818, the exceptions were all allowed, except one, which related to the commissions of the accountants. On the 27th of June, 1818, the administrators petitioned the court for a rehearing, the exceptions having been allowed in their absence, when one of them was sick and unable to attend. The court granted a rule on the next of kin to show cause, why there should not be a rehearing, which was continued till the l6thof March, 1820, when they decided, that the account having been settled, they had no power to open it, and the rule was discharged. The administrators then entered their appeal to this court. The articles which were excepted to, in the Orphans’ Court, and struck out of the account of the administrators, by the decree of that court, were three accounts, distinguished by the numbers, 6, 7, and 9. Number 6, was the account of John Snyder, against the deceased, consisting of two items, one, of 461 dollars 68 cents, fpr two years, six months, and thirteen days board, of the deceased; the other, of 60 dollars 70 cents, for expenses of the funeral of the deceased,- making an aggregate of 524 dollars 18 cents, for which the administrators claimed credit, having been paid by them. The account, No. 7, for which also, the administrators claimed credit, having been paid by them, was an account of Jibraham Metz, against the deceased, for keeping his horse for seven years and one month, amounting to 446 dollars 25 cents. The account, No. 9, was an account of David Cassel,{ one of the administrators,)against the deceased,for his board, for six years, amounting to 1092 dollars. We have received evidence by the oaths of several witnesses, of the truth, and reasonableness of these accounts, and no evidence has been offered to the contrary. It is objected indeed, that the prices charged for board of the deceased, and for keeping his horse, are too high, but there has been -no testimony in support of this objection. The board is charged at 3 dollars 50 cents’ a week, and horse*keeping, at a little more than 60 dollars a year. It does not appear to us, that the charge for keeping the horse is extravagant, and as for the board, so much depends on the manner'in which aman is treated, and the accommodation he receives, that it is not easy to decide on the quantum meruit. The deceased appears to have been a man of singular temper — an old bachelor, who had worked hard, and laid up a' considerable sum of money; after which, he determined to spend the remainder of his life in idleness, or, at his ease, as ho expressed it, and was little anxious about what he should leave to those who came after him. Indeed, he had no great cause for solicitude on that head; for, who áre his next of kin, or whether he has any kin, in this country, seems to be matter of great uncer *206 tainty. He was treated kindly by his landlords, and was well satisfied; so that I think there can be no objection to liberal allowances. When the cause was opened, it struck me as a suspicious circumstance, that a man who had the command of money, should leave his accounts so long unpaid. That matter, however, has been accounted for. Abraham Metz, and David Cassel, were both in debt to the intestate, so that-his account against them, at the time of his death, overbalanced their accounts against him. The administrators have credited the estate, with the amount of the debts due from these persons, and charged it with the sums due to them. When the Orphan’s Court struck these charges out of the account of the administrators, they were not present, and consequently, had no opportunity of supporting them. They petitioned for a rehearing, in a few days, and during the same ses~ sion of the court. And it really does appear to me, that they might have been heard without any breach of law; for I cannot think, that the hands of the court are tied, from opening an account, the moment after they have closed it. For what period of time their power to open an account continues, I mean not now to give an opinion. It is enough for the present occasion, to say, that I am satisfied they, have power to open and re-examine it at any time during the same term at which it was settled. With regard then, to the three items which I have mentioned, the accounts number 6, 7, and 9, which were struck out of the account of the appellants,by the decree of the Orphans’ Court, I am of opinion, that they have been supported by sufficient evidence, and should therefore be reinstated. But there is a mátter of much greater magnitude, remaining for consideration. The appellants settled & joint account of their administration, and charged themselves with the sum of 8307 dollars and 49 cents, due upon bond, and book account, from David Cassel, one of the appellants, to the intestate. It is now re-' quested by Christian Metz, the other appellant, that he may be discharged from this sum, because he has discovered, since the settlement of the account in the Orphans’ Court, that his co-administrator, Cassel^ was insolvent, at the death of the intestate. I will not, because thé case does not require it, give an opinion, on the propriety of this court’s acting on an exception which was not taken in the court belovv- Supposing then, for argument sake, that there is no objection to our considering the exception last mentioned, let us see what are its merits. The appellants took out joint letters of administration, and in a short time, viz. on the 19th October, 1816, returned an inventory, amounting to 5178 dollars and 63 cents, composed principally of debts due to the deceased. By this inventory, it appeared that Cassel, one of the administrators, was largely indebted to the deceased, a circumstance, which, it must be presumed, was concealed from the register of wills, when he granted-the letters of administration; for it cannot be supposed, *207 that, had he been informed of this 'circumstance, he would have committed the administration to a man who was a debtor of the deceased, and not of his kin. The two administrators, then, (for I cannot separate them,) were to blame, in the outset. They thrust themselves, improperly, into this office, with a view, no doubt, of making profit out of the estate. In about 13 months, after the return of the, inventory, they exhibited an account of their administration, and charged themselves jointly, with the whole amount of the inventory, and received & joint compensation, i{ for their time, trouble, and expense, in administering the estate.” Had there been any doubt of the payment of any of the debts, with which they had charged themselves, in the inventory,,that was the time to claim ah allowance. It cannot be said, that they were ignorant of the legal effect of settling a joint account, because they aeted under the advice of very able counsel, and were allowed a reasonable sum for his opinion. No doubt they received sound advice from their counsel in matter of law. But with their private affairs, or with their solvency or insolvency, he had nothing to do. There was no mistake then, as to their rendering themselves jointly liable for the balance of their account. And as to the debt due from Cassel, his co-administrator, Metz,, took upon himself to guarantee it; or rather he acknowledged it as cash in the hands of his colleague for which he himself was immediately responsible. And thus the matter rested for four years, during which," no complaint was heard from Metz, on that subject. But at length, he alleged, that there was error in the administration account, in charging him with Cassel’s debt, and prayed for redress in that particular, on the ground of information he had received, since the settlement in the Orphans’ Court, viz. that Cassel wa.s insolvent at the time of the return of the inventory. To listen to such a plea, at such a time, and under such circumstances, would be setting a most dangerous precedent: The truth of the. matter is simply this: When the administrators account was settled, Metz trusted to Cassel; he had aright to trust to him, and in consequence of making himself jointly liable, those who were interested in the estate, thought themselves safe, and took no steps against Cassel. But had Metz then exercised the right which he certainly possessed, of settling a separate account, it would have bee.n known, that Cassel was the person to be looked to, for his own debt; and no one can now say, that it might not have been secured, , Cassel’s situation was this — he'was largely indebted, and possessed of large real property, .which was then very high. By the fall of real property, his estate has fallen far short of his debt’s. But had he been pressed at the time of settling the administration account, when he appears to have been in good credit, it is not very improbable that he might have found security for payment of the balance. No case has been cited, where an administrator has been relieved, against a balance *208 with which he has charged himself, under similar circumstances; and I am not for giving the first precedent in this instance. My opinion on the whole of this caséis, that the decree of the Orphans’ Court be reversed, so far as concerns the items, No. 6, 7, and 9, which were struck out of the credit side of the appellant’s account; and that in all other respects it be affirmed.