The opinion of the court was delivered by
Tilg-hman, C. J.
This is an appeal from a decree of the Orphans’ Court of Cumberland county, on the settlement of the administration account of Ann Porter, Abraham Adams, and Caleb North, executors of the testament and last will of Robert Porter, deceased. The executors settled a former account, in which they charged themselves jointly with the whole personal estate of their testator, and the Orphans’ Court decreed that there was a balance *58 due from them, amounting to three thousand five hundred and seventy dollars and fifty-eight cents. This decree bears date on the 15th of September, 1819. Afterwards, on the 11th oí February, 1S25, the Orphans’ Court issued a citation against the executors, to appear on the 10th of May following, and settle a supplementary account. In consequence of this citation, the three executors appeared and settled separate accounts, which are the subject of this appeal. The main, question is, whether the Orphans’ Court acted correctly, in opening the first account, in which the executors were all charged jointly, and permitting them to settle separate accounts, by which two of them were discharged from almost the whole of the balance of the first account, leaving only Ann Porter chargeable. The appellants are creditors, who consider themselves in danger, if Adams and North are discharged. The ground on which the executors rely, for the settlement of separate accounts, is, that they are only liable fpr their own acts respectively, and not jointly, or each for the others. This is certainly the general principle, but it does not follow that they may not consent to charge themselves jointly, or that the law will not charge them jointly, where all have assented to the act of one, or where all have been culpably negligent in suffering one to take possession and dispose of the estate. In the case before us, the testator’s personal estate consisted of cash, household goods, store goods and merchandise, book debts and bond debts. His wife, Ann, one of the executors, had a daughter of the name of Margaret Steel; and almost the whole of the personal estate was specifically bequeathed to the wife and her said daughter, and a granddaughter of the testator’s named Eliza Steel, and to the children of the testator by a former wife. Immediately on his death, the wife took possession of the household and store goods, and continued to carry on the business of store-keeping for some time, buying new goods occasionally, to keep up the stock. Finally, she sold the whole of the goods on hand to Benjamin and Henry Lease, and took their bonds for the purchase money. The executors all resided in Millerstown, and one of them (Adams,) lived with the widow Porter, until the autumn succeeding his marriage with her daughter Margaret Steel, when he removed to his own house, apd Mrs. Porter went with him, carrying her household goods along with her. It was in proof, that within a few months after the death of the testator, the executors all had notice of a claim against the estate, which might eventually sweep away a great part. The testator had, in his lifetime, sold a house and lot in Lewistown for two .thousand dollars to Joseph Martin, and had-given bond, with Robert Porter, jr., and John Vance, his securities, on condition that in case Morton, his heirs or assigns, should be evicted, the obligor should refund all money paid to him on account of the said house and lot, with interest, and all costs of suit and counsel fees expended by Martin in the course of his de *59 fence. Martin sold this property to M‘Coy and others, against whom an ejectment was brought to August Term, 1817, by the heirs of George Porter, who obtained a verdict and judgment in May, 1823. During the pendency of this ejectment, all the executors were consulted by the tenants, and gave their opinion as to the employment of counsel, &c. After the eviction, an action was brought in the name of Martin, for the use of M‘Coy, against the executors of Robert Porter (the assignees) on the before-mentioned bond of indemnity, and judgment was obtained against them in February, 1824, for three thousand six hundred and fifty-eight dollars and three and a half cents. • Vance, -the security of the testator, is dead, and his executor, James Creswell, together with M‘Coy, are the persons who appealed from the decree of the Orphans’ Court. If that decree stands, they may be much injui’ed, as it is uncertain what are the circumstances of Ann Porter, the only person to whom they will have to look for indemnity.
It was, to say the least of it, an act of great imprudence in the other executors, to suffer the widow to take -possession, and have the disposition of almost the whole of the personal estate, without giving security; especially as they must have known that she continued to keep a store, and was liable to all the perils attending that occupation. A moment’s reflection ought to have satisfied them, that the property of their testator was in danger. They were probably sensible of this, and the consciousness of their having acted in concert with Mrs. Porter, may have been the reason of their settling a joint administration account, thereby subjecting themselves to the hazard which they had brought upon the estate. It is evident that both before, and after the settlement of' the first administration account, both Adams and North considered themselves responsible, because they took a refunding bond from Eliza Steel on the 11th of June, 1817, before they suffered her to take possession of her share, (one fourth) of the store goods bequeathed to her by the testator, and then in the hands of bis widow, and another refunding bond from Thomas Cochran, on the 17th of April, 1821, for a specific legacy of one hundred and fifty dollars, bequeathed to his son Robert. There is no reason to think, that any of the executors were ignorant of the nature, or consequences of a joint account. It is unnecessary to say, whether, under the circumstances of the case, all the executors had rendered themselves responsible for the paper which went into the hands oiAnn Porter, independently of the settlement of the first administration account. But it is very clear, that, taking that settlement into consideration, with the other circumstances, the executors should not be permitted, after the lapse of six years, to open the account, and so entirely to alter its nature, as .to take off all responsibility from two of them. I do not say, that if after the settlement of a joint account, the executors should in a short and reasonable time, satisfy the Orphans’ Court that they had acted under a misappre *60 hension, that court would not have power to relieve them. But six years is an unreasonable time. Even four years was thought too long a period in the case of Metz's Appeal, 11 Serg. & Rawle, 204. The executors acquiesced in the decree made on their first settlement, and it is remarkable that the subject would not have been taken up again, had it not been for a citation, at the instance of the creditors, to compel them to the settlement of a supplementary account. I presume it was supposed by the creditors, that assets had come to the hands of the executors, after their first settlement. Otherwise it would have been much better for them to proceed, under the act of the 1st of April, 1823, Purd. Pig. 619, by virtue of which they might have filed a transcript of the decree among the records of the Court of Common Pleas of Cumberland county, whereupon each creditor might have instituted an action of debt, or issued a scire facias for the recovery of his debt. I am of opinion, on the whole, that the last decree of the Orphans’ Court should be reversed, and a new account stated by the prothonotary of this court, wherein the executors shall be charged jointly with the balance decreed against them on their first settlement, and allowed for all payments of debts due from the deceased, made since that settlement, and all debts due to him, wherewith they had charged themselves, and which have been found to be irrecoverable. But no allowance is to be made for the payment of any legacy, specific or pecuniary; such payments being improper to introduce into an administration account. If either party objects to any item of charge or discharge, stated by the prothonotary, it is to be referred to this court, who will decide upon it before their final decree. The question of interest is referred for future consideration.