## Case of Patterson's Estate.

Watts & S.
1ws291
184  506

Each of several co-administrators has a right to settle a separate account of his administration, but this will not affect his joint liability on his official bond for the acts of his co-administrator.

APPEAL by James Patterson one of the heirs of John Patterson, deceased, from the decree of the Orphans' Court of *York* county settling the administration account of William Reed one of the administrators of John Patterson, deceased.

Upon the death of John Patterson administration *pendente lite* upon his estate was granted to Moses Rankin and Samuel Bacon, who on the 14th of September 1817 settled an account, exhibiting a balance in their hands of $2,939.64. These administrators were afterwards discharged and new letters were granted to Moses Rankin and Jacob Eichelberger, on the 20th of October 1820. On the 11th of September 1821, Moses Rankin, styling himself surviving administrator *pendente lite*, settled another account, charging himself with the last balance and introducing new items on both sides of the account. This account was intended to be of the administration of the said Moses Rankin and Samuel Bacon, and exhibited a balance in his hands of $2,849.87½. On the 17th of September 1822, Moses Rankin and Jacob Eichelberger settled an account, and charge themselves with the last balance, take some credits and leave a balance in their hands of $1,823.81, consisting as they say of bonds and judgments not collected.

About this time a decision was made against the validity of the will of John Patterson, and on the 27th of October 1823 administration was granted to Jacob Eichelberger and William Reed, who gave bond in the usual form with sureties in $3,000. On the 4th of December 1839, William Reed presented an account of his administration showing that he had received some small sums and paid out some more, leaving a small balance in his favour. To this account an exception was filed by James Patterson one of the heirs, that the accountant should be charged with $1,823.81, the balance in the hands of Jacob Eichelberger his co-administrator upon the settlement of his account as administrator *pendente lite.* Eichelberger had been dead several years.

The court below (Durkee, President) overruled the exception, and the account was confirmed.

*Ramsey,* for appellants. Administrators being jointly and severally liable for the acts of each other, we contend that the present accountant should be charged with the moneys which were in the hands of his co-administrator Jacob Eichelberger. The form in which he shall be charged can not be a matter of importance; if he be liable on his bond, he may as well be charged in this shape. 16 *Serg. & Rawle* 416; 1 *Watts* 365.

*Mayer,* for appellee. It is too well settled to be now disturbed, that each administrator may settle an account of his own doings. 14 *Serg. & Rawle* 357; *Act of 27th March* 1813; 2 *Penn. Rep.* 482; 3 *Rawle* 371. It would be inconvenient if an administrator were bound to try his liability for the acts of his co-administrator in the shape of an exception to his account; inconvenient as respects the rights of the heirs, and especially so as regards the administrators themselves. There is no reason therefore for disturbing the rule so judiciously settled.

The opinion of the Court was delivered by

Huston, J.—In 11 *Serg. & Rawle* 204, 207, it is said by the late Chief Justice that each administrator certainly has the right of settling a separate account, and in such case each is to be looked to for that portion of the estate which came to his hands. And, *M'Nair's Appeal,* (4 *Rawle* 157) after an elaborate discussion, comes to this conclusion: " I am induced to believe that there is no good reason for making executors or administrators liable more than trustees, for moneys which they have never actually received, merely because they joined in a receipt with the co-executor or co-administrator who did receive it." In this case, however, Reed never did join in any receipt, at least it is not stated that he did. It will, however, be observed that each of these judges was speaking of the liability of the administrator in the first instance in the Orphans' Court. It is well settled that Chancery will compel him

[Case of Patterson's Estate.]

to pay in the first instance who will be ultimately liable. The Orphans' Court is a Court of Chancery, and acts, or ought to act, on Chancery principles: and, where administrators are solvent, will decree each to pay according to right and justice. But administrators join in a bond for the faithful performance of their duty, and when sued on this bond, will each be bound for the *devastavit* of the other—so will the sureties in the bond given by them.

But it must further be considered that Reed had no power to draw the assets out of the hands of his co-administrator—each was bound to pay debts and legacies, and each had an equal right to keep the assets in his hands for that purpose—and one administrator can not sustain a suit against another as long as there are claims against them to be paid. *Steinman* v. *Saunderson*, (14 *Serg. & Rawle* 357.) When a man dies indebted or chargeable with moneys not accounted for, his representatives must settle those accounts, and his estate pay those debts if it is sufficient. Eichelberger's representatives may be able, though Reed is not, to show that this money has been properly applied. If on a settlement of his accounts this is not shown, resort may be had to the administration bond. Or it is possible this money or part of it may have never been received from Rankin, who charged himself with it jointly with Eichelberger. Rankin and Eichelberger gave bond and sureties : are they entirely discharged? But the only matter before us is the question, could Reed file and settle a separate account? and on principle and authority he could. How far he or any others may be liable in a suit on the bond, we are not called on at this time to say.

Decree affirmed.